We'll resume with our second two cases, United States v. Care Alternatives, and we will be hearing first from the government. Yes, Your Honor. Good morning. Amanda Mundell on behalf of the United States. Federal law requires hospice providers to bill for Medicare hospice benefits to obtain a physician's certification if a patient is terminally ill, accompanied by supporting medical documentation. And that requirement that these certifications be adequately supported is a central feature of a hospice benefits system. And there are several indicia under ESCOBAR that false certifications, including certifications that are inadequately supported, are material. Counselor, where did this report go wrong? Your Honor, this report went wrong in one big area, and that's the government action or inaction factor under ESCOBAR. There's a couple of problems with the court's conclusion that the government could see what was being submitted to it and ended up paying these claims anyway and then treating that as dispositive evidence of materiality. Now, first of all, the first error there that's baked into that determination is that the government couldn't see what was being submitted to it at the time that the claims were being submitted. The physician certifications and the accompanying medical documentation is not provided to CMS when a hospice benefits provider is submitting a claim. So that's just demonstrably unsupported. But second, even after the government became aware of the allegations and related complaints, for example, there are several cases out there that make clear that the mere awareness of allegations of fraud doesn't equate to actual knowledge of fraud on the government's part. But don't we have more than just awareness of allegations here? This is a case, it's now been about 15 years that this has been kicking around. And while the particular patients in question in the original complaint may have passed and those claims ceased by the time the government got the complaint, sent out its subpoena, the government investigated for seven or so years before making a decision about intervention. Surely in that time, in the course of receiving the documents, the government reviewed the documents and made a determination about whether the documentation deficiencies were sufficiently substantial and systemic to warrant action on the government's part. When it didn't act, why isn't that strong evidence that ESCOBAR says we should be considering? I think, again, we need to go back to what the government had available to it at various points in time and what the government knew. Now, to be sure, if the government, either at the time it paid the claims or at the time that it could seek recoupment, for example, actually knew that these medical records were inadequate, didn't support a hospice determination, and then determined, well, even though these patients shouldn't be on hospice, we'll just go ahead and pay the claims anyway, that would be very strong evidence that there's factors in that material. Whose burden was it to show evidence about actual knowledge or lack of actual knowledge? Whose burden, Your Honor? Whose burden? At summary judgment, Your Honor, we have to take all the inferences in favor of the non-moving party. And here there are instances in the record that indicate this is a material component, that this misrepresentation or failure to complete this requirement would be material to the government. Did CARE alternatives have to prove that the government had actual knowledge when it paid, and, ergo, it was immaterial? I don't think CARE alternatives had to prove that necessarily, Your Honor, but I think that is exactly what the district court thought CARE alternatives had argued and had indicated. The district court said the relators had to show. The relators had to show. Seriality. Correct. The relators had to show the absence of, you know, the government's decision or actual knowledge. And if the government did have actual knowledge, put forth some evidence that this was still material anyway. And the problem with that there is the court really just assumed that the government had actual knowledge. The government did not have actual knowledge. And so that's where a lot of those errors flow from. Can we be clear what the actual knowledge is about? Because in a couple of things you've said, you seem to be toggling back and forth between two different issues. One is the certification about whether the patients really were eligible, whether they meet the definition of terminal. And surely that goes to the essence of the bargain. But I thought at this point, and with our first opinion where we're talking about legal falsity, not factual, that the focus is really on the implied certification theory about the sufficiency of documentation. That's correct, Your Honor. And that also is central to the bargain here. The only reason these patients receive hospice benefits is because a physician has made a medical determination, supported by clinical documentation, that this patient needs palliative and not curative care because they're going to die in six months. And if that determination were not made, if that information is not in their medical records, if the medical records are missing key pieces of information that suggest that this patient actually should be getting curative care, then that is something that is absolutely material to the government's decision to pay and absolutely central to this whole program. So there are always going to be some things that are missing in documentation, right? I mean, the fact that the documentation is not 100% compliant is not itself always going to give rise to materiality, right? That may be the case, Your Honor, if it's a minor or insubstantial violation. I don't think that that's what the record supports here. And I think it might be helpful to direct the Court's attention to some JA citations that can help flush that out. Before we do that, I just want to understand the relationship between those two different things, because if the ultimate question is for the government's payment, the government's satisfaction that the patient is eligible, then the lack of documentation itself may or may not, a violation there, may or may not be material. And if we see government inaction in the face of allegations of inadequate documentation, that is an indication, arguably, of the government's assessment of eligibility. That, where we're looking at seven years of government inaction with certainly some documentation deficiencies, is the question whether, for us, whether the government ultimately determined that these patients were eligible. Is that eligibility question still in the case in terms of materiality, or are we only looking at the question now of the documentation being sufficient to itself be material, that deficiency being material or immaterial? Your Honor, I think it's mostly the latter, because there really is no indication in the record as to why the government didn't seek recoupment. Because, to be clear, by the time the government received notice of the allegations in this complaint, the claims had been paid on these patients. And as the government was investigating these claims, those patients passed away. And so we're no longer in a circumstance where the government was making a decision about paying or not paying based on information that it already had in front of it. It was receiving that information later in time. The government's investigation wasn't limited to 17 claims, right? That's correct, Your Honor. But at that point going forward, again, we have to look at what is being provided to the government. And there's indications in this record that the information given to the government, even at that time, may well not have been sufficient to apprise the government of whether these patients were eligible for hospice benefits. I want to be clear if I understand that I've exceeded now at this point my eight minutes, and I don't want to turn too much over later this time. But if I may, I'd like to continue to flush this out because I think it's important. I suspect you were in the courtroom earlier, so we will make sure that you get through your argument and appreciate your help to the court in doing so. Thank you, Your Honor. So if I could just take a step back and maybe separate out the elements at issue here. There's no dispute that the falsity issue is going to a jury because relators have put up enough evidence to indicate that these claims are false, that they lack the appropriate accompanying documentation that is required under the statute. That documentation is important, not just because it checks a box. And I take the court's point that there may be an instance where perhaps a patient's medical record is just in the wrong file, so it's not being kept with the rest of the records. And, you know, if an audit were to be performed, you know, maybe CMS couldn't find it, but really that medical information exists and could be tracked down. And in that instance, perhaps it's not a material violation. But this record's requirement to have the clinical documentation exist, have it be accurate and complete and support a hospice determination, that is material. It's not just a checkmark because it's the whole reason why a physician could certify that a patient is eligible in the first place. Is the falsity question, as you understand it, is the falsity question going to the jury also whether the patients were eligible or do we confront a situation given the reports, the competing expert reports, where the patients are eligible under a reasonable medical opinion. The question is simply about the adequacy of documentation. Your Honor, if that's the evidence that's presented in trial, if that's the conclusion the jury draws that these patients really are eligible and it's a question of whether there is enough in the medical records to support that, that may be a difficult question. On the record before us, relators have put enough into the record to indicate that the existence of that documentation, its completeness, its accuracy, and any misrepresentations to that effect are materials of government. And that's really the only question this Court has to decide at this point. So didn't CARE alternatives, in order to get summary judgment, somehow have to convince the Court that the government paid the claims, and we're only talking about maybe a year, you said 17 claims, paid them with actual knowledge? For the very beginning there were, and I don't know the exact number, maybe 17, maybe 20 or 40. The complaint was served on them in September of 2008. That's right. And the question is, when did the government then have sufficient knowledge that we could infer from payment that the lack of certification was immaterial? And we don't know what knowledge. CARE alternatives hasn't told us what the government knew. Did they depose government officials at all? No, Your Honor, no. So we don't know what the government knew when? That's right, based on the record. We know that the government had issued some subpoenas. So isn't that the crux of the problem here? If we don't know any information about what the government knew, I would think you would say there's no way CARE alternative is entitled to summary judgment. Absolutely, especially on this record where it is clear that there is evidence indicating that this is a material requirement. Now here I suspect CARE alternatives may take issue with the extent of the government's knowledge, but the government had no actual knowledge, certainly not at the time the claims were paid, that any of this documentation was inadequate or missing or incomplete or false. When we're looking at materiality for purposes of reviewing summary judgment here, I'm still not clear why we're limiting it to the original handful of claims in the complaint. The complaint comes to the government's attention. It's indicative to a prosecutor of the potential for systemic deficiencies in controls. Subpoenas go out. There's an expert that has reviewed at least 47 additional records. Isn't our analysis looking at the period of seven years of the government reviewing the documentation and controls from what came back from the subpoena and from the expert report and not taking any action and what inference we should draw from that under ESCOBAR? Your Honor, I think the only inference the court could draw from those periods of time is nothing related to what the government could have known or done with the knowledge it had at the time it paid claims, but instead whether the government could have taken steps once it did have knowledge of these allegations or the records at that time. Now, there wasn't a step that the government could go back in time and cancel out those payments. It could seek recruitment. It could conduct audits. There are various tools at the government's disposal. It could debar. True, and to be clear, the government didn't take those steps, but that's not dispositive under ESCOBAR. It may be an indicator. We're not saying it's not. But isn't that strong evidence? Is there some reason that we should limit the ESCOBAR's indication as to that factor to claims that actual knowledge before the particular claims in the QCAM complaint were paid? Isn't it really the same analysis when you're looking at the potential afterwards, especially over a period of years of government investigation, of any action, of recruitment, of audits, of debarment, of any action at all? It's certainly relevant under ESCOBAR, Your Honor, but the question is, is it dispositive? Is that enough to get summary judgment here? You're saying it's a jury question. Absolutely, Your Honor. These particular facts in this instance, that's our position. We think that there's a spectrum here where if the evidence of materiality is so obvious, so clear, that could allow for judgment as a matter of law. That's one end of the spectrum. Where the evidence of materiality is so obvious and so clear that it is not material, that's the other end of the spectrum. But we are in this middle place where factors under ESCOBAR are really pointing in opposite directions. And I want to get back to this point where there is some record evidence to suggest that this is material to the government and also that this is nearly one factor under ESCOBAR. And if I may, I'd just like to flesh that out for a moment. Taking aside the government action prong under ESCOBAR, I think we need to go back and take a common sense understanding of why this requirement exists in the first place. Because these benefits are designed to go to patients who actually need and are actually entitled to hospice care. And it really defies common sense to think that the government would go ahead and pay for hospice benefits for patients who ought to be deserving curative care. That is just so far beyond the examples of where violations are really just minor or insubstantial that the government is willing to look the other way or ignore requirements of the statute and continue to pay claims anyway. This is something that really does go to the essence of the program and the essence of the bargain. And I would stress that under ESCOBAR, as this court knows, that's a holistic test. And under circumstances where factors of ESCOBAR point in opposite directions in some cases, that's something that a jury should determine. And just to look at the record evidence, because I understand that the defendants here have claimed that there's really nothing in the record that suggests materiality from the government's point of view. If you take a look at the Barbara Bain deposition, which appears in different places in the appendix, but Joint Appendix pages 1959 to 1961, Bain testifies that there were instructions by one of the doctors and another supervisor, I think her name was Ms. Swick, to leave out information or to take out documentation that would otherwise have rendered a patient potentially ineligible for hospice care or at least certainly would have raised questions on an audit as to whether this patient was deserving of hospice care. And I point that out because that's an instance where when we think about what the government knew or could have known or what the government could have done during its investigatory period, if it's being presented with records that themselves are incomplete, where nurses or other employees are leaving out information, not falsifying per se, changing bits of information, but just not being as complete or thorough, it misleads the government's determination even on an investigation as to whether these patients could have been eligible, whether the claims were properly paid. Didn't the district court make findings that there was no evidence to support that allegation of falsification of records? Your Honor, I understand the district court made findings with respect to, I think, employees actually just changing information, deleting information. I think this is an instance where information simply was not recorded, and there are examples of why that is. Patients who can have fluent conversations, for example, with a nurse, wouldn't typically be eligible for hospice. But if they can only verbalize six words or fewer, that's an indication that they may be eligible for hospice. And in Ms. Bain's deposition, I believe, or perhaps in Ms. Druden's deposition, there's a discussion about leaving out information about having had conversations with these patients that were fluent, that included more than six words. So insofar as that contradicts the district court's factual findings, that finding would be clearly erroneous because there is information in the records from which a jury may well conclude the opposite, that information that was provided to the government during its investigation and information that existed in these medical records at the time these claims were submitted was incomplete and missing critical information. And that's not the only example in the JA. There are others. From Ms. Druden's deposition at JA-364 to JA-401, there's a discussion and questions about pressure from Care Alternatives itself, that Care Alternatives would have conversations with these employees about the way that you survive as a hospice provider is to keep the census up. Ms. Druden testifies that the CEO and other higher-ups in the administration would instruct to keep the census up, whatever you've got to do, and, quote, words to the effect of, close quote, without regard to hospice eligibility. So that's instructions, again, in the record from people who are in positions of authority in Care Alternatives instructing employees to just get the bodies in the beds. Now, we're not saying at this point that that's absolutely determinative or dispositive, but the district court overlooked evidence in the record by focusing exclusively on this government action or inaction problem under SOR that failed to account for this holistic assessment and failed to consider that a jury really could look at the information presented here and conclude that these misrepresentations were material to the government. Just before we sit down, is it the government's view that, notwithstanding our prior peek-in, that the question of eligibility of the patients remains an open question for FDA purposes for the jury? I apologize. Maybe I'm not totally understanding your question. I know that the falsity question is going to a jury, this idea that when physicians have differences of opinion, that perhaps these physician certifications were false because they just don't have enough information to back them up. The medical records simply point in the opposite direction. I think that does go to eligibility at bottom. So that question is going to go to a jury. I don't know if that answers your question or if I'm just misunderstanding. All right. Thank you. Mr. Bagelman?  My name is Ross Bagelman of the firm of Bagelman & Orlow, on behalf of the appellate, Druding et al. Your Honors, I would respectfully request to reserve three minutes of my time for rebuttal. If it please the Court, we are here today because the district court erred, and we assert that it erred, in two areas and should be reversed. The court erred as to the law, meaning it did not do an ESCOBAR analysis and did not consider all the elements of ESCOBAR. It's important to note that ESCOBAR does not say that the issue of what the government would do is dispositive in and of itself. It said it has to look at a holistic approach, a diversified approach, and look at various elements. I would respectfully remind this Court that before ESCOBAR, the standard in the Third Circuit was condition of payment. And in this case, there is a clear and unambiguous condition of payment. Now, ESCOBAR may have changed all that. I know there is some debate whether ESCOBAR was a floor or a ceiling, and if there was no condition of payment, can you still prove materiality by showing what the government had done in the past, by showing it's a major violation, by showing that it goes to the essence of the bargain? But I'm not here to argue what I believe that a condition of payment should be enough, because that's not the issues in this case. And the issues in this case is the judge, while stating ESCOBAR and putting in a few lines about what the different standards or considerations or elements of ESCOBAR is, then only made one determination, that we, meaning the plaintiff, the appellate, did not show that the government did not act, did not show why the government did not act. And that is something that sometimes is beyond any relator's capabilities. This is a private-public partnership between the government, and there's many reasons why a government declines. Are you asking us then to just vacate and remand for the district court to conduct a full analysis and explain itself? No, no, I'm not. I'm asking, well, I'd rather have that than upholding the opinion below, of course. But no, in fact, not that you're going to look at my notes, but if you look at my notes, I end with the fact that we do not want you to do that. We want a reversal as a matter of law. And that is because if you look at ESCOBAR and you don't do what the appellate wants you to do, which is set a ESCOBAR plus standard, a standard that says if there's no showing that if the government had action, actual knowledge, it would have done X, Y, and Z, then that's now the new standard. So it's not ESCOBAR. It's higher than ESCOBAR. It's a larger – You want us to vacate and remand for trial, correct? Yes, yes, I do. This case was filed in 2008, and it's not an indication on the substance of the case that the government, especially in those days before court pressure to move cases while they're under seal, as we're all aware of some judges. It's not an indication of viability. I was here before, Your Honor. I don't want to be here a third time on this case. This case went all the way to a request by the defendant for certiorari to the Supreme Court. It sort of went to the full paddle of the Third Circuit. But what I remember, and I think it was from you, Your Honor, because you were here during that argument, is you said in this circuit we're entitled to – we believe in jury trials. And you indicated also when you asked the defendant in that case, the appellee in that case, do you – in this circuit, the fact that there's a declination does not mean that the case isn't – that isn't valid or substantive. And I think, Your Honor, I think you mentioned during oral argument that the government has the power to go to court and get cases dismissed when they think it's frivolous. Well, what – your view is that the district court erred because it said a relator had to show that it wasn't material. Is it your contention that CARE Alternatives had to show that it was, in fact, immaterial? No. It's our position that we do not have to show it. Oh, you do not. But in order for them to get summary judgment, I assume your contention is the only way they can be entitled to summary judgment is they show absolutely that this documentation was immaterial. Your Honor, the first case that I handled in the False Claims Act case, maybe 30 years ago, because I've handled so many of them, in front of this court, the trial judge said that there's a difference between – if a regulation requires a number three pencil compared to a number two pencil, and a defendant used a number three pencil, that's not a material violation. That's minor and that's not the purpose of the False Claims Act. So let's take that scenario of a number two and a number three pencil. In the regulation that requires a number two pencil, there's nothing that says that it's a condition of payment. Our case says there's a condition of payment. In fact, it emphasizes it in both the legislation and the regulations. There's nothing in the number two versus number three. So that's relevant. The fact that it's a condition of payment is relevant. It's a reality. Yes. Okay. But you're saying that a jury should decide that, and the court was wrong in entering summary judgment. Is that correct? That's correct. I think a judge can instruct a jury that it does have a condition of payment. It's in the regulation. And then leave it up to the jury whether it's material or minor. Let me ask you again, though. Sure. What did CARE alternatives have to show in order to get summary judgment? And what did they not show? CARE alternatives has to show that looking at the record below and giving the benefit of every inference to the plaintiff, to the relator, and the government, because they are on the case, to the relator, that they couldn't prove their case. There's no issue for a jury. And in this case, there's clearly issues for a jury. The judge ruled that falsity, not initially. Well, but we're here on materiality. Correct. It's your contention that they had to prove that the lack of certifications was immaterial to the government. Well, it's not the certifications. It's the records that support the summary judgment. I mean, the documentation. I'm sorry. I think they have to – well, that's one alternative. If they could prove it, then they'd be entitled to summary judgment. I think they'd be entitled to summary judgment, because that's why we say in our briefs that they failed to come forward. But to say, because we may have – and I don't concede this, because I'll address it in a second – saying that we don't have evidence, we haven't presented evidence of one element of the four diversified elements of Escobar, means that we failed Escobar. It's not Escobar. It flies in the face of Escobar with the Supreme Court rule that there is a holistic approach, that you have to look at all the different items. Can we just step back for a second? I want to make sure we're talking about the same standard, because summary judgment, what they needed to show is that there's just no genuine issue of material facts as to materiality. Yes. Right? Yes. So if they are able to point out to the district court or we are persuaded that there is nothing more than a scintilla of evidence that relators put forward, or that there's nothing but speculation as to materiality, then as a matter of law and summary judgment, they would be entitled to have that granted. You're correct, but that's not this case. Understood. But that's the standard that we're operating under. Yes. I noticed my time is up. I actually had three short points to make. I know you're indulging everybody today. Go ahead. These are important matters. And they're in response to some of your questions for the government. And one of them is this contention that there was only 17 false claims, for lack of a better word. And I draw your attention to Joint Appendix 517, which is the exhibit to our experts report who reviewed all the records. And there are 45% of the files he reviewed were false. A 45% error rate. False in the sense of not satisfying the documentation criteria or false. Do you continue to press the argument that it was false as to the eligibility of patients? Yes. Okay. Yes. Because eligibility is conditioned on certification and supporting records. Just think, if you were an insurance company or the government, who is the largest insurance company in the country, and all that's needed is a doctor to say it's needed. So people go to Marcus Welby and their family doctor, and they say, you know, my mother's having some trouble with some issues. And he said, you know, I can certify you in a hospice care. They'll put you in a bed. They'll give you daily care. You don't have to worry about using all the assets for your children because I'll just say you need hospice care. That's exactly what's meant to prevent. This is so expensive. And there's tens of millions of claims going to the government. And it was exhausting just reviewing the small number of records that we chose for tactical reasons to review. It would have been impossible for us to review every claim. Just the amount of time it takes to review a medical record. It's common sense, which is my next point. But is it related contention that something like that is what happened here, or simply that the documentation was inadequate? Because you can certainly have the regulations are set up such that if there is a concern about documentation, the government can raise that with amenity. And then there's the opportunity to come forward with additional documentation. Even outside the record, even getting testimony about what happened to substantiate eligibility. No, that's not our contention, Your Honor. It's not our contention that there was a Mark Swopey example I just gave you. I just gave that as an example of common sense, why this is material to the government, why this is a condition of payment. Why it is a condition of payment is because without it, there'd be total chaos and the program would fail. Okay, but the fact that it's a condition of payment doesn't mean that the violation here was material. No, and I'd sure like to be making that argument today, but that's not why I'm here. Because I personally believe that it should be, that Escobar was a floor, not a ceiling. But that's not the point here. And I'm not seeking new law. I'm seeking to interpret Escobar and adhere to it. The other point I'd like to make, Your Honor, is that actually two points, I'll be very quick, is that not only was the judge wrong on the law, which I think we've all addressed, whether you agree or not, we'll find out. But it's also wrong on the record. Because the judge makes the statement that the government got these records at the time it paid the records, paid the claim. And the government doesn't get any of that. All it gets is the claim form. And it's years later that we're in litigation. And the seven years of investigation just shows how hard it is to, the task that we had to climb, how hard it is to prove these types of cases. And that the government didn't go back. Well, they make the argument that the government keeps paying us up to this day. Well, I'm not saying their claims are false or fraudulent today. I'm not saying they were false or fraudulent in 2010. I'm not saying they were false or fraudulent. I am saying they were false or fraudulent in 2006 and 2007 and maybe a few in 2009. But the point is that that's not the argument. And their argument is not relevant. I should have saved that for rebuttal. But I just wanted to indicate, Judge, that there's nothing in the record that supports the judge's conclusion. And I also have one other statement, and I'll thank you for the extra time you gave me. And that is this case has gone on now since 2008. At no time since 2008, during those seven years and during this extensive litigation and appeal process, has the defendant admitted that they had a false claim. And then could say, well, we told the government we didn't have the supporting records, and then they didn't want to do anything. For the entire time, this has been litigated and disputed and challenged. They don't have an expert that says we agree that 45% of our claims missed documentation, but the government didn't do anything. That's the case the judge ruled on, but that's not this case. In this case, they dispute every single claim and claim that every single claim was valid. The chaos that would occur in the hospice industry if the government just cut off people based on disputed allegations, which is what they contend, would defeat the whole hospice system. Again, there's a difference between disputed allegations about eligibility versus adequacy of documentation. I don't think so, Judge. If we have a hypothetical, let me just give you this hypothetical case. I'm trying to make sure I understand the way the material doesn't work under the statute here. Say we have a case where there's no dispute that the patients were in fact terminal. All of them, by any reasonable medical judgment, was expected to pass within six months. But the entity had not put the documentation in the file at the time that supported those medical judgments. Would the violation, the documentation violation, under those circumstances be material? Absolutely. And why is that? Because the government would have no way of knowing whether it could agree that these patients needed hospice care or not. Without those supporting records, what you're asking for is a get-out-of-jail-free card, so to speak, a pass to the next level, and say that you get paid. This is such expensive and high-intensity care, what you get from hospice care, and the government pays for that the government would just have to take their word, because it would be impossible for the government to make the stipulation that you want them to make in your scenario, because how do they know these people? When you say someone's going to die in six months, you don't know they're going to die in six months. There are miracles that happen. You could say to someone, I had a bookkeeper that passed away after being diagnosed after 14 days. She thought she had months. She was going to work up until the day she died, the day before she died. She had no idea the truth, but she died quicker. Life and death are not always known to men, but what we know for science is that it's the opinion of a doctor that they're going to pass away within six months based on science, predictability, and here is why I am saying it. And what we're missing here is the here is why we're saying it. Judge, I'd just like to say one other thing that this issue about, which is really a center issue, about that they knew that the government required this because of all their conduct that we allege and have testimony about. I am not mixing elements. I'm the one who came here last time saying there should be no mixing of falsity and scienter. So I'm not doing that here. But the actions they took do go to the issue of materiality on the limited extent of whether it's a major or minor violation because if it was a minor violation, they wouldn't have called all their employees up to the main office to change the records and to fill in gaps. They knew that this dealt with getting paid. And so it goes to that. That goes to your point that it really is a jury to hear all that. That is 100% my point. All of the aspects to go towards was it material or not. Your argument is if they hauled all their employees up, it didn't matter. We're asking for you to reverse the corpulo and get us to a jury finally. Thank you. Thank you. Mr. Buchholz? Good morning, Your Honors. May it please the Court, Jeffrey Buchholz for CARE Alternatives. I'd like to start by trying to give clear answers to two different sets of questions that Your Honors have asked repeatedly of both of my friends on the other side. First, what's really at issue in this case at this point? And then second, I'll get in a second, to the summary judgment framework and burdens and how all that works. What's at issue? At the summary judgment hearing in the district court, the district court asked the same kinds of questions. Is this about eligibility under the substantive standards, six months or less to live, or is this about documentation? And Relators Council made absolutely clear that it's only about documentation. So this is at JA 3814. Relators Council says, Council can bang on the table all he wants, saying these people need hospice. That's not the issue here. The issue here is in order to get paid for hospice, you must maintain records. The very next page, 3815, you reiterate the issue here is not whether they belonged. The issue here is whether it was documented. There are several other places in that same summary judgment hearing that I could quote, but the point is Relators Council made very, very clear below that this case is no longer about substantive eligibility for hospice. And so as the court thinks about materiality and what there's been a lot of talk about common sense and what you would assume would be material or what wouldn't be material, it's important to understand that this case is 15 years old. As this case sits now, as the district court decided it, it's only about documentation. And the second point I want to make is in response to Your Honor's questions about summary judgment and burdens and how all that works. So I believe that my friend from the government conceded that it's not CARE Alternatives, excuse me, my friend for the Relators conceded that it was not CARE Alternatives' burden to prove immateriality. The Relators, the plaintiffs here, they have the burden of proof on materiality and all the other elements of their claims. At trial, but for purposes of summary judgment, what do you understand your burden to be in order to get summary judgment on the materiality issue? Yes, Your Honor. As a defendant, we don't have the burden of proof on materiality. The Relators do. But on summary judgment, what do you have to show? You have to show there's no genuine issue of material fact. Correct. But in order to show there's no genuine issue of material fact on materiality, don't you have to show that there's no way a jury could find that these things were material? Yes, Your Honor. The point I'm trying to make is there's a distinction between a defendant conclusively disproving an element of the plaintiff's claim, which is not our burden, and pointing out the absence of evidence in the plaintiff's favor, which was our burden. Well, but you also, in order to succeed on materiality, you need to show, and we're assuming, and maybe that's wrong, that the plaintiff has shown enough evidence to show that these things, there is an issue about materiality here from their standpoint as they're experts, et cetera. That's exactly the problem. I'm sorry, Your Honor. I didn't mean to interrupt you. Are you disputing that? Are you saying they haven't even done enough to show there's an issue about materiality? Yes. So let me go back to Escobar and let me make clear what I'm talking about when I say materiality. Escobar says materiality, this is a quote, looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation. So, again, we're talking here only about allegations of inadequate documentation, not talking about substantive hospice eligibility. So the relator's burden as the party with the burden of proof was to present some evidence that would entitle a reasonable jury, without speculating, to find that documentation inadequacies, like those alleged here, have an effect on the likely or actual behavior of CMS in paying these claims. So let's talk about likely and actual separately. So as to actual, what we know is this case has been pending for 15 years, and the alleged documentation inadequacies here have had zero actual effect on the government's decision. That would seem to be relevant, that, oh, wow, the government hasn't done anything. But there are reasons the government doesn't do things. Number one, it's not worth it. Number two, someone just doesn't have the initiative to do it. But that's the kind of thing that goes before a jury. It's not the kind of thing that we say, and your brief commented a lot about the government's not recouping. But there are a lot of reasons people don't sue to recoup, and that's why a jury trial is necessary here. A jury trial is necessary, Your Honor, if there's evidence on both sides. Let me be very clear about this. We are not asking the court to hold that the government's failure to take action in the case at hand is conclusive of immateriality. That would be incorrect. We're not asking the court to hold that. We're not asking the court even to hold that by pointing out, A, the government took no action in the case at hand, B, relators presented no evidence of the government ever denying payment or recouping payment based on similarly alleged inadequate documentation in any other case. We're not asking the court to hold that even that adds up to our conclusively disproving materiality. We didn't have the burden of conclusively disproving materiality, but the relators don't get to go to a jury based on speculation. They have to have evidence. And here, as I think Your Honor just said a moment ago, and as I believe Ms. Mandel conceded, the government's inaction is at least some evidence of immateriality. It's not conclusive, to be sure. So if the relators had gone to CMS in discovery and gotten discovery about how, gotten evidence about CMS denying or recouping payment based on similar alleged documentation issues in other cases, perhaps that would mean there was evidence on both sides of the equation and there would be an issue for trial for a jury. They didn't do that. Relators did not ever get any evidence of any kind from the government in this case. I don't know why they chose not to. Escobar says materiality turns on the effect on the likely or actual behavior of the government payer. This is a multi-factor test, right? And that is one factor that we weigh. Well, with respect, Your Honor, I don't think what I just said about the quote from Escobar about looking to the effect on the likely or actual behavior is a factor. I think that's the test. What the court says is, yes, of course, and to respond to my friend for the relators, he's trying to argue that maybe even under Escobar, if something isn't a condition of payment, it can still be material. Escobar rejects the idea that it's enough that it's a condition of payment. All condition of payment means that sort of terminology for the government has the legal authority to deny payment on a given basis. If the government doesn't even have the legal authority to deny payment on a given basis, then the government isn't actually going to, and so it's clearly not material under Escobar. But the flip side, Escobar makes it very clear, and I'll quote, Your Honor, directly from Escobar. Nor is it sufficient for a finding of materiality. Where are you in Escobar? This is on page 194 of the U.S. reports. Nor is it sufficient for a finding of materiality that the government would have the option to decline to pay if it knew of the defendant's noncompliance. But why is not a condition of payment as a matter of law sufficient evidence produced by the relator as to the materiality of this documentation? Your Honor, because that's what the government argued to the Supreme Court in Escobar, and the Supreme Court rejected. No, no, no, not conclusive. It's definitely not conclusive, but it certainly is extremely relevant that it is a condition of payment. That puts the materiality scale in favor of the relators, that there is a condition of payment that you don't get paid unless there is this supporting documentation. And that's sufficient evidence that that is really material to the government. So you can't say that the relators haven't put forth any evidence or not sufficient evidence. A condition of payment alone is very relevant evidence. Escobar says that. It says it's not dispositive or conclusive, but it certainly gets them halfway down the field. I don't think so, Your Honor. Maybe we're talking about condition of payment in different ways. Let me try to be clear in answering your question. Escobar says materiality turns on the effect on the likely or actual payment decision of the agency. If something isn't a condition of payment, meaning it doesn't give the agency authority to deny payment, well, then you're done. That's a gating question. But Escobar holds. The Supreme Court held that it's not enough that it be a condition of payment because lots of things give the government authority to deny payment. And according to Escobar, it gives the example of a requirement to buy American-made staplers. The government could write its regulations in a way that it has the authority to deny payment. But right after the passage of your quoting, the next sentence, contrast it with materiality cannot be found where noncompliance is minor and substantial. Okay, that's minor and substantial. But look at the leader's experts here. You have a bunch of people who are dementia patients who are speaking. You have dementia patients who are gaining weight, not losing weight. You know, a bunch of these diagnostic criteria that don't look minor or insubstantial, they're pretty important for diagnostic purposes to understand whether the person, you know, can't communicate. Your Honor, that's why I started with what this case is about at this stage. It's not about what Your Honor just alluded to. It's only about documentation. But the documentation would enable the government to see that this person doesn't come close to satisfying the dementia or end-of-life criteria. I think it was Judge Krause who asked the question. Let's assume that the patient was actually substantively hospice-eligible, but the documentation wasn't collected to show that. Would you expect the government in that situation to say the documentation by itself is a reason for us to deny payment? Or would you expect the government to say the patient needed hospice, the patient belonged in hospice, the patient got hospice, that's what we, the government, are really paying for? Yes, we also require documentation, but that doesn't mean under ESCOBAR that we need to  And so here, the relators chose in the district court to make clear that their case is only about a lack of documentation and not about substantive hospice eligibility. In a different case, those two things could be linked. In a different case, the relators could take the position or the government could take the position that the lack of adequate documentation shows that people weren't hospice-eligible. They've certainly focused on documentation, but they've made the argument here, and I wonder if that was also the import of the excerpts that you're quoting, that without the adequate documentation, the government simply can't ascertain, none of us can ascertain, a jury can't ascertain whether folks were really eligible or not. So their focus is on the documentation, but we don't have here the affirmative concession that all of the patients where there was inadequate documentation were eligible. And that's connected to why the standard requires actual knowledge on the government's part. And actual knowledge appears to be contested here, and the district court may have made an error in its assessment of actual knowledge. So let me quote a couple of more places from the summary judgment hearing below, where I do think we got that concession, Judge Krause, that you just alluded to, and then Judge Peeves, I'll try to respond to the rest of your question. So on page 3772 of the JA, the Relators Council says, this case is not about whether or not a patient needed hospice. A paragraph later, what this case is about is whether, pursuant to statute or regulation issued by CMS, the defendant has properly documented those needs. And then a few pages after that, at JA 3779, the district judge asks, is your claim here premised on the fact that the patients were not eligible for hospice, or is it, and I'm leaving out some in between, premised on the medical charts being incomplete? The answer is, from Relators Council, it's premised on the medical charts lacking documentation to support those certifications. All we're dealing with here is a lack of documentation. And then again, on JA 3781, the district judge asks Relators Council, is there liability just because the charts were incomplete, just as Judge Krause, you asked. If the patients were eligible for hospice care, why does the missing paperwork matter? Relators Council's answer. Your friend, Ms. Mundell, on the other side, directed us to specific places in the record. They were told to leave out facts, facts that could be material. Thus, the documentation shades into the basis for the government's decision-making. If you leave out that a patient is articulate, then the government's going to look at it and say, well, we don't have a basis for disputing this person isn't hospice-eligible because the file was corrupted. Well, Judge Bevis, my friend, Ms. Mundell, is an amicus here. The Relators are the party. The Relators get to decide what their claim is. The Relators conceded below that their claim is only about documentation. So that's their choice. They're the party. The government had seven years to investigate this case until its heart was content. This case was administratively closed for seven years during the period of time where that's the way things worked in the District of New Jersey. The government had plenty of time to do all the investigation it wanted. It chose not to become a party. So it doesn't get to define what's at issue here. The Relators do. And that's what they said. I'm confused. I thought this case was about documentation, about the requirement that there be documentation. And that's the requirement, that there be documentation. And that's the problem, that if there was no documentation and the government knew, oh, you know, we got the certification here for 50 patients, but there's no documentation to support it. And the government says, eh, okay, that's fine. We really don't care. But the point is that issue has to be, you have to look at whether it's material, that the documentation be there. And, you know, just as Solomon says, defendants can be liable for violating requirements, even if they were not expressly designated as conditions of payment. Here, it's expressly designated as conditions of payment. Conversely, even when a requirement is expressly designated condition of payment, not every violation of such a requirement gives rise to liability. Okay, understood. What matters is not the label the government attaches, but whether the defendant knowingly violated a requirement, i.e., the presence of backup documentation, that the defendant knows is material to the government's payment decision. Well, as I said, I think you get halfway up the football field with materiality from the later standpoint, because, you know, it is a condition of payment. So we really are talking about documentation. How are we not? So we are, Your Honor. Let me try to answer your question. Okay, I don't know why the confession below that we're talking about documentation is necessarily bad, harmful to the relator. Because the relators tried to argue today that it's common sense that if a patient isn't actually hospice-eligible, if the patient isn't actually terminal, well then, of course, that would be material to the government. That's not what this case is about. Oh, okay. So that was why. All right. But the presence or absence of the documentation would seem to be material to the government, because it's a condition of payment. So you need to tell me why, in all these instances, it wasn't material to the government. The legal question is whether it's sufficient to get to a jury on materiality that a condition, that a requirement is a basis for the government to deny payment in its discretion or not. Escobar, in my view, holds no, that it's not so. I'll read again from 3, excuse me, 194. A misrepresentation cannot be deemed material merely because the government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. So we know from the Supreme Court that isn't enough. There has to be something more. You don't get all the way down the football field, but you certainly get, you certainly is a sufficient evidence. It's not irrelevant. But Your Honor, a plaintiff doesn't get. Escobar says it's highly relevant. But a plaintiff, in any kind of a case, but the False Claims Act and materiality aside, in any kind of a case, a plaintiff doesn't get to a jury by doing only something that the Supreme Court says isn't enough. Right? Well, it's enough to get to the jury if there is some evidence. And here's some condition of payment. It's some evidence. The government argued in Escobar that just because the government, anytime the government had authority legally, that that made it material as a matter of law. And the Supreme Court rejects. And the Supreme Court says it's not material as a matter of law. It's one thing to be considered. So, Your Honors, I realize my time has expired, and I appreciate your indulgence. There are many circuits that have held that the government's failure to take any action of any kind in the case at hand is at least some evidence of immateriality. That shifts the burden to the plaintiff, to the relator, to do something to counter that. That creates an issue then. If the relators carry their burden of presenting some evidence that would allow the jury to A burden-shifting framework, you're saying. Well, I'm saying the defendant at some Donald Douglas? No, no, no, not at all, Your Honor. Maybe I misspoke. All I mean is the defendant at summary judgment has to point to the absence of evidence in the plaintiff's favor. So we did more than that here. We didn't actually have to do anything to show immateriality. That wasn't our burden. All we had to do was point to the absence of evidence of materiality. We did more than that. We presented evidence of government inaction. However much weight Your Honors want to give to that, I think even Ms. Mundell conceded that it's entitled to some weight. It's some evidence that tends to suggest, although not dispositive, immateriality. So then the question is, the relators have the burden of proof. They have to present evidence that would allow a jury, without speculating, to find that this kind of alleged documentation issue tends to have an actual effect on the government's payment decision. We know it didn't here. You're putting summary judgment. You're saying there's a burden-shifting in summary judgment. Really, summary judgment is, is there a genuine issue of material fact? And you're saying, you know, the fact that the government didn't sue to recoup, you're trying to make that controlling, whereas it just means the whole issue has to go before a jury. I'm really not trying to make that controlling, Your Honor. I'm really trying to make the point that we did more than what we had to do. We didn't have to prove immateriality. All we had to do was point to the absence of evidence of materiality. The district court treated this as strong evidence. If we think it's only modest evidence and not strong evidence, we ought to reverse the district court. I don't think so, Your Honor. This case has been going on for 15 years. If this court has in front of it all it needs to decide the summary judgment question maybe more precisely or more fully than the district court explained it, I think the court should go ahead and do that. And I think the legal analysis here should be we know from Escobar that it isn't enough that something is a basis legally for the government to deny payment, that instead the question is what is the actual effect in the real world on the government's payment decisions? That requires evidence, not just speculation. What if we take, say we even take it as strong evidence of lack of materiality, that there's government inaction for this period, and that the fact that it's a condition of payment, that it's a requirement, is not in and of itself sufficient. We're left with this other factor that the court identified about it being a substantial violation, something that goes to the essence of the bargain. And here, even given what you've identified in the record, the relators may have premised their case on the failure of documentation, but there's not an affirmative agreement that all of the patients were eligible. Their argument seems to be our focus is on documentation. This is an implied certification theory. And without more complete certification, you just can't know one way or the other. That's why we're focused on the documentation. But when we look at whether it's substantial or not, we've got, I mean, they're competing expert reports, but we've got an expert report on their side that says that the documentation deficiencies are substantial. That there are sort of systemic issues about whether information was being left out, what sorts of things should be included, whether files, whether documents were even being placed in the right patient's file or were being mis-filed, that there's just deficiencies in controls that are substantial. Why isn't that enough to get to a jury on that third prong of Escobar? Because Escobar says that the question is, is the government likely in the real world to deny payment on a given basis? There's no evidence here to answer that question to relators. Fairly, the only evidence that bears on that question here is what actually happened here, which is the government has taken no action of any kind. I want to be clear what we're asking the court to decide and what we're not asking the court to decide. My friends on the other side sometimes have characterized the issue as whether the documentation requirement is material. That's not the issue. Escobar makes clear that the question is whether the misrepresentation is material, the falsity is material. So you could have a requirement like this documentation requirement that might in itself be material or could be material in certain circumstances. That's not the question. The question is, is it material? Are the violations alleged here material? So you could have a total miss on documentation. You could have a case that's very different from this one where there's no documentation and there's no way to tell whether someone is eligible. Maybe that would be material. I don't know. There's no evidence about how the government deals with that. Whether the requirement was material. That's what Escobar says. Was the requirement material? No, Your Honor. Actually, with respect, I don't think that's what Escobar says. Escobar says the question is whether the misrepresentation is material because it's the relationship between falsity and materiality. So the falsity has to be material. The requirement can be material in the abstract or sometimes it might be immaterial in the abstract like the staplers in the Escobar example. But just because the requirement could be material in a different case doesn't mean the relators have presented evidence that the marginal miss on documentation may allege here. This is not a case where there's an allegation that there's no documentation. It's about judgment calls about what documentation is enough or not enough. Let me ask you. Your friends on the other side do note with some force that the district court appears to have misunderstood the payment scheme. The district court said the government could see what was or wasn't submitted by CARE Alternatives. So if you think that, then you're inclined to think, well, the government saw these things and let them go, so therefore not material. And that appears not to be right. The providers don't send in the documentation until Medicare requests it. So doesn't that inflect or color the district court's evaluation of the record such that, you know, we really ought to at least remand? Your Honor, I don't think so. It is true that the district court made that comment, and we're not – That comment was erroneous, correct? Yeah, that's not my understanding of how this works. When you submit your claims, you don't submit the underlying documentation along with it. The agency can ask you to, but you don't generally do that as a matter of course. That's true. But here, we don't just have that, right? This would be a different case, and maybe a remand would be required if there were evidence on the relator's side of the equation, where the district court then would have relied very heavily on that premise, which is not accurate. But all the district court really was getting at there, the district court underscored the word some evidence. The relator's burden was to present some evidence. They didn't. So whether the evidence of immateriality on our side is conclusive, which we're not arguing, or strong, or weak, doesn't really matter. Because the burden was on the relator to present affirmative evidence of materiality that a jury could rely on in deciding whether the government – whether these kinds of documentation-alleged deficiencies would have an actual effect on the government's payment decision. They didn't present any evidence like that. I don't know why they didn't go to CMS and ask for evidence about whether CMS has denied payment on this basis in other cases. They didn't. And your contention is the fact that it is, as a matter of law, a condition of payment, is not at all probative of materiality? My contention, Judge Rendell, is the Supreme Court held in Escobar that that's not sufficient. Well, they said it's not game, set, match. Well, they also said in footnote 6 that you can grant motions to dismiss, let alone motions for summary judgment, as here, based on materiality. They specifically rejected the notion that materiality was too fact-intensive to be disposed of early in the case. And so if it really were true, Judge Rendell, that any time the government had legal authority to deny payment on a given basis, that at least created a jury question of materiality, then footnote 6 in Escobar would be wrong. And the Supreme Court said it right there very clearly. So I think Escobar really can't be interpreted to mean that a relator gets to a jury any time the government has legal authority to deny payment on a given basis. Instead, the question again under Escobar is the effect on the likely or actual behavior of the recipient of the alleged misrepresentation. That's an empirical question, not a legal question. It requires looking at what the agency, who supposedly was defrauded, actually does. What it did in this case, what it's done in other similar cases, or even potentially what it would do if a similar case were presented. But that requires evidence from the agency. The relators didn't do that here, so they didn't carry their burden at summary judgment to present evidence rather than asking a jury to rely on speculation. If this case were remanded for trial, as my friend is asking, what would the jury look to beside materiality? There is literally no evidence here about the effect on the likely or actual payment decision by the government, other than the fact that the government has done nothing in 15 years, not to lift a finger, even administratively, in this case. That's all there is, all the evidence there is. If we were disagreeing with you in remanding, would it actually be for trial to move forward? Did the district court address on summary judgment all of the elements? Scienter, for example? The district court did address Scienter in the same decision and ruled against us, denied summary judgment on Scienter. I don't know offhand whether there would be other issues that would arise between remand and trial. I don't want to say there wouldn't be. There might be. I'm not sure. But really, all we're asking the court to do here is – let me go back a step. There's been a lot of discussion here. This is an important case for everybody, but there's been a lot of discussion this morning about broad, far-reaching issues. This appeal doesn't actually present broad, far-reaching issues. It's a summary judgment appeal, so it's tied to the record in this case and only the record in this case. This court doesn't need to decide how much weight to give the government's inaction in another case. The court doesn't need to decide whether the documentation requirement in itself could be material, whether other kinds of violations of that requirement could be material in other cases. The court doesn't even need to decide in a platonic sense whether the alleged documentation violations at issue here are material. Because answering that question under ESSABAR requires getting evidence from the agency. There is not. Each and every case requires some evidence from the agency to prove an influence, that a jury cannot reasonably infer this no matter how blatant the documentation failure is, no matter how substantial the omission is. Your Honor, if the case is about documentation as opposed to substantive eligibility, I don't think that it just somehow goes without saying that documentation is necessarily so critical the government would deny payment. And you can just assume that. You can speculate that. You can assume that. I don't think that's fair. If this were a case like in 1863 about a contractor selling the Union Army sawdust instead of gunpowder, okay. But it's not. It's about documentation. It's not about substantive hospice eligibility. ESSABAR itself said, okay, it's not material if it's minor or insubstantial. I think the natural inference of a minor insubstantial violation is no causal effect. But I think omission of the fact that some dementia patient is fully fluent and gaining weight, that's a situation in which the fact that you left that out of the file is enough that a jury could find, well, doesn't meet the government's own diagnostic criteria. Your Honor, the issue about the documentation here is, again, to take a half a step back. There's been discussion in the briefs about what CMS has said about this regulation, about the importance of documentation. And, again, we're not asking the court to hold that documentation is not important, is not material, can't be material in some other case. But CMS has also emphasized that the substantive eligibility criteria in six months or less to live is a judgment call. You are asking us to hold that in each and every case where it's a documentation case, you need to go and take discovery and bring in documents that show that subjectively in this case the government did something different, that it can't just be inferred from a jury because you view that as speculation. Is that your position? Yes, where the agency has said. That is your position that there must be internal agents. If I could finish my answer because it isn't quite that simple, Your Honor. So where the agency, as here, has said, the underlying substantive eligibility criterion is itself a judgment call. There isn't really a right or wrong answer. It's a part out of science to predict how long someone has to live. And where the adequacy of documentation is also a judgment call because it's a spectrum of documentation. It's not no documentation. This is not a case where there's no documentation. It's a case about whether the documentation is adequate or not. That's also a judgment call. So you have a judgment call upon a judgment call, and you have concessions repeatedly by the relators that this case, at this point in time, is only about documentation, not about substantive eligibility. I don't think that a jury can just assume without any actual evidence that the government would deny payment based on those documentation issues. Maybe the government would, right? I don't know what evidence there might be behind the door of CMS that the relators didn't go get you. The government actually would deny payment, but there's, you know, reasonable probability of influencing the government's decision. Fair enough. But again, predicting that, that's an empirical question. Predicting how likely a given issue is to affect the government's payment decision requires, in all but the most extreme case where it's sawdust rather than gunpowder, requires knowing something about how the government actually makes those decisions. Here, the relators didn't present any evidence of that. That's all this appeal is about. It's not about these broader questions that the other side is talking about. We're not asking the court for a broad holding about documentation always being immaterial. We're not asking the court for a broad holding about government inaction always being dispositive. We're not asking for any of that. It's just a summary judgment case. This record is completely devoid of evidence that would allow a jury, without speculating, to find that the kinds of alleged documentation deficiencies here generally or even reasonably often lead the government to deny payment. But would you concede that the condition of payment requirement is a relevant consideration for materiality? Well, Judge Randell, it's relevant in the sense that if a requirement isn't a condition of payment, then that's a gating issue. No, I'm saying that the fact that it is a condition of payment, isn't that relevant evidence regarding materiality? Only in the sense of the inverse. Only in the sense that if something isn't a condition of payment, that means the government doesn't have the legal authority to deny payment on that basis. So, of course, it can't be material in the sense of actually tending in the real world to affect the government's payment decision. But why would you not agree that having the condition of payment is relevant evidence? Isn't it relevant evidence? It's not relevant evidence, Your Honor. It's relevant legally because it gets past the gating question of is there even a materiality question in the empirical sense meant by Escobar to ask here? Because if there's no legal authority for the government to deny payment, you don't get to that empirical question. But Escobar holds that materiality asks an empirical question, the effect on the likely or actual behavior of the government agency. But Escobar also says it is relevant but not dispositive, because the issue before the court was by virtue of the condition of payment, you were home free on the issue of materiality, correct? So that was the issue before the court. The lower court had said there's a condition of payment, so that satisfies, I mean, game, set, match. It's dispositive on materiality. So I don't think the government took quite that position, and I don't remember exactly what the First Circuit had said in the decision that the Supreme Court reviewed there. But I think the best way to read Escobar, reading all of it together, is Escobar holds materiality asks an empirical question. It looks to the effect on the likely or actual behavior, right? If the requirements at issue that the defendant allegedly violated is not even a condition of payment, then by definition it can't have an effect on the likely or actual behavior. So it's relevant in that sense. But the converse doesn't hold. It doesn't hold that just because something is a condition of payment that a jury can find without speculating that the likely or actual effect of violating that requirement, to whatever degree it's allegedly violated in the case at hand, because, again, it's not the materiality of all non of the requirement. It's the materiality of the alleged misrepresentation. So when it goes back, your contention is they better offer more proof in front of the jury. And that's probably correct. Well, certainly, Your Honor, my contention is it shouldn't go back, because the district court was correct to find that they didn't present enough evidence to get to a jury. And, again, if there's a legal issue here, it's, as opposed to just a record-dependent, case-specific summary judgment issue, if there's a legal issue, it's does the fact that something gives the government that a requirement is a basis for the government legally to deny a payment, without more, without any more, is that enough to get to a jury on materiality? And the answer to that, I think, under ESCBAR is no. Thank you for your intelligence for the time, Your Honors. If you have no further questions, we'd ask the court to affirm. Mr. Begley, before we hear from you in rebuttal, can we have Ms. Mundell for just a moment? Thank you, Your Honors. Thank you. Ms. Mundell, you've heard various counsel addressing this question that I gather came up before the district court as well. What is the false issue that is either summary judgment was properly or improperly granted on? What's the government's position? Is there a dispute from the government's perspective about whether the patients that were under care alternative care were eligible for hospice? That's my understanding, Your Honor, based on the fact that we have in the record evidence of these expert witnesses pointing in opposite directions on whether the medical record supported an eligibility certification. So my understanding is that although relators have focused on the extent of the documentation, how complete it is, that flows into the question of whether these patients ought to have been on hospice at all, because that's the whole point of having the documentation is to support the certification that supports the claim. Well, our prior opinion ended up focusing on the question of legal falsity and documentation, in part because the district court had pointed out, not unreasonably, that when you have experts, including the relator's experts, saying that these determinations about whether someone's eligible or not are a matter of medical judgment and they're imprecise and you can't accurately predict necessarily whether someone's going to survive for this period, that if you have diverging reasonable medical judgments that you can't, as a matter of law, say that there's a disputed issue as to eligibility, that both sides agreed that if there is one reasonable medical opinion, at least, that someone is eligible, that kind of answers the question on that criteria. Documentation, then, would seem to be a different question. So am I understanding this correctly? If not, can you help me better understand what is the role where we have, on this record, different medical opinions, but at least they agree on the fact that reasonable physicians could come to different conclusions about eligibility? So, Your Honor, I think some of this may be better posed to relators counsel who were involved in some of these earlier phases, but I'll try to see if I can clear up any confusion. I think it's true that there are times when physician determinations can point in opposite directions, as we can see from these expert reports. I don't understand this Court's previous decision to have been any different from recognizing that the existence of a dispute on whether a patient ought to have been receiving hospice benefits is something that simply cannot be decided. In other words, a claim is not false or true just because a physician disagrees with another physician's determination. That's what I understand the first phase of this case to really be about. And this Court said, no, there's no such thing as a subjective falsity requirement. It's going to be up to a jury to determine whether these claims that were submitted were false. In other words, whether they were supported by a physician certification that has enough documentation in there to demonstrate that this patient really was eligible for hospice. That's my understanding. And, Your Honor, if that's incorrect, I trust that relators counsel who were involved in more of the mechanics and the details of that phase can correct that. But here's why that documentation matters, not just as a checkmark in the regulations, but also to emphasize why these certifications and eligibility determinations are important. Because without the documentation there complete or without any of the documentation at all, there's simply no way for the government to verify that these patients are actually eligible. So I take the Court's point that it is a slightly different question, but I think they are related. Because if it didn't matter at all for the purposes of paying these claims, then, of course, we wouldn't need to worry about whether the documentation existed or was accurate. And so when the Court asks, you know, let's assume, for example, that all these patients are terminal, who cares about whether the medical records are complete? I don't think that's quite the right question. I really think the question under Escobar is, you know, if the claims were false, and everyone agrees, that's going to a jury. If we assume that these claims were false, is that falsification something that's going to lead the government to have paid these claims? And I think the answer to that question has to be yes. Because if they're told, yes, these patients are hospice eligible, yes, they can't speak more than six words at a time, yes, they're wheelchair bound, there's nothing left for the government to determine or dispute. If that looks like it satisfies the criteria, if we promise that all those patients have medical records that back that up, that's the end of it. But if you look deeper, if those records don't exist, if they're inadequate, if they're misleading, then that changes the calculus on the government side. So I think to round that off, you know, it's very perplexing to have a circumstance like this, where everybody agrees that the question of knowledge and the question of falsity have to go to a jury, and yet somehow the question of materiality simply can be decided as a matter of law on this record. We take issue with that, Your Honor. We think that was error for the district court to have reached that conclusion, because there is substantial components of this record that demonstrate that this is something that is material to the government. I'm sure the government's been following the Supreme Court heard argument last week, you know, the False Friends Act is going to be, depending on how the opinion gets written, is going to be answering a question about whether it's scienter or falsity that's really objective, and what, you know, evidence ought to be considered. Is that something that you anticipate would affect the way we decide this case, and is there a need to hold this case? I suppose it wouldn't be too long, given that they already had an argument, but for an opinion by the Supreme Court? Your Honor, I don't think so. I mean, here we know that those issues are going to a jury. The real question here is, once we take a look at this record, is there enough in there to create a genuine dispute as to whether this misrepresentation, these false claims are material to the government? I think the court can decide that without waiting, but, you know, if the court thinks that there's going to be some information in that opinion that would really bear on the court's analysis, it's true that holding this case for a brief period I certainly don't think would affect, you know, the disposition of this case in terms of, you know, parties waiting to decide whether they are going to get care or get payments or anything like that. Thank you. Thank you, Your Honor. If it pleases the court. We are not coming here today, nor did we come to the lower court to seek summary judgment on our behalf, and that seems to be the standard that the defense, the appellee, is taking in this case. If we were to go to the court and say, as a matter of law, we have proved materiality, and therefore it doesn't need to go to the jury, then it would be fair game for the appellee to say, well, they haven't produced a government witness to say that. There's an issue of fact that we dispute. It looks like you're going to ask me a question, Judge. The court argues with some force that below, in the summary judgment here, you characterize this entirely as a documentation case. What is your response to him? Well, Judge, I think referring to it as a documentation case is an effort by the defense to minimize a significant issue, and I think you have to look at trial strategy, and you have to say to yourself, am I going to need to argue a negative? Am I going to be able to say, I don't have records, or the records are inadequate, but I want to go to the actual patient who's probably now died or is on his deathbed, and I want to put the patient and his family up on the stand, and I want to have a case, patient by patient by patient trial of whether or not that patient, that's not the requirement, and the whole system would collapse. So it is a documentation case because it is a fundamental element, a fundamental condition of payment, not to use it as a legal term, but to use it in a factual term, that it's a condition of payment that you have to have records to support your claim. And our expert says that 45% of the time they do not. Their expert says that in 100% of the time they do. They're now saying, well, the government should have chose between which expert and made a decision to get the money back or to not pay future claims. That's not the issue in this case. But there's no dispute that 100% of the cases had a certification by a physician, right? It's not a dispute that 100% of the cases have certifications by a physician. And there's no allegation that you've made, at least that I've seen, it doesn't appear to be part of this case that you're claiming that there was bad faith on the part of any of the certifying physicians. Well, Judge, I hate to say nothing on the record that would show that, but that's not a hurdle that we've chosen to jump, because to do that would then require almost a medical malpractice trial, almost a quasi-criminal trial after each one of those doctors. And we did not expect the doctors to come and say, yeah, I certified because I did something improper or illegal. So we chose the lowest hanging fruit, which was the fact that there was no records to support it. And my only point is that we didn't seek summary judgment here. And that's the falsity in the defense argument, is that they're saying, well, you didn't come forward. Well, if we were seeking summary judgment, I'd understand that argument. But I want to say what I start out saying in this case, and that is that they are seeking a new standard that's above Escobar. Escobar has never said that a condition of payment is this gate that allows you to go in and the government, therefore, has the ability. In fact, I would suggest to you that Escobar actually says the opposite, that if you don't even have a condition of payment listed, a court, and therefore a jury, could determine that the issue is so material and so much the essence of the bargain, and the government has taken action in cases like this before, the other elements, that even though there's not a condition of payment, it's still a false claim. But that's not the case we're here on today. I understand. I want to make sure that even as we think about how to write an opinion, that we're focused on the right thing. So in your answer previously, I take it you do not dispute that the physician certifications of eligibility were all in good faith. You're not disputing that? We're not making that an issue in this case. Okay. And your own expert agreed that reasonable physicians could agree on the records that he had reviewed that patients were eligible. I understand that seems to be an important issue to Your Honor, or a question, I don't want to say it's an issue, but a question to have, but we were here before on that issue, and as a matter of law, this court has ruled, and it was taken all the way for certiorari of the Supreme Court into the full panel, that objective falsity is not the standard in this circuit. And it's really irrelevant whether the two reasonable persons would disagree. That's a question for the jury. When I bring a medical malpractice case, the plaintiff's expert says, boy, did they not live to standards. And the defense doctor says, what a great job they did. And the jury decides between the two. Yeah, I'm asking something slightly different, which is the false certification. Is the false certification as to eligibility? Is the false certification as to documentation? And I'm just trying to make sure I'm clear. The false certification is to eligibility because it lacks documentation. Your theory of the case. Your theory of the case is that the false certification was only as to documentation. Documentation that supported eligibility, yes. In other words, these patients are not eligible without the documentation. Your theory of the case is not that the false certification was as to eligibility. Our theory of the case is that it was not as to the actual medical condition of the patient. They were not eligible because they lacked documentation to support their eligibility, which is a condition, a material. It's the essence of the bargain, to use all the Escobar phrases. And that's what we're saying. I'm not trying to nitpick, but I don't want to concede something that I'm not willing to concede. And so I agree with you. This is a case based on lack of documentation to support eligibility. You can't divorce that from eligibility. It goes hand in hand. I could divorce it from did they really need hospice or not, but whether they need hospice or not, they don't get it without a certification and they don't get it without supporting documentation. So the fact as to whether or not they needed a hospice is irrelevant. The issue is whether they were qualified for the hospice benefit, and that's the issue in this case. Qualified sounds like eligibility. Yes, well, I'm saying it is eligibility. I'm just trying not to argue with you. Your theory of the case is that the false certification was as to eligibility, or your theory of the case is not that it was as to eligibility. It's that it was a false certification as to documentation. The falsity in this case is dealing with eligibility because they're not entitled to the benefit without the documentation. I'm not trying to twist and turn here. I just want to be accurate as to what we're saying. Judge, can I just mention one more point? I know they're now moving to time. Wouldn't they be eligible if the government waived that requirement? The government would never waive that requirement. It has not waived the requirement, and there's no evidence that the government has waived the requirement. So if they were to produce a government witness, it's not their burden, but if they were to produce a government witness to say, yeah, we don't care. But you say eligibility. You're not talking about the actual health of the patient. You're talking as a matter of the statute eligibility. Correct. Okay. That makes a big difference. Yes. That makes a huge difference. You're still talking about documentation required, and they're not eligible because the documentation wasn't there. That's correct. So that's your position. It doesn't have to do with their condition warranting. No, no. That would be a hurdle too high for us. We didn't have to jump it. Just one quick comment. Let me then just ask my question a little differently. Okay. Your theory of the case then is it's not that these patients didn't qualify for hospice care in terms of their condition. It may or may not have. I have no way of knowing that without the medical documentation. There's no way of us proving or disproving that without the documentation being adequate. So we based it on the records that were required to be kept as a condition of payment. And the violation is the actual having the records. Yes. Or what the records say, whether they support it or not. The issue about falsifying records just goes to Center. But it does go to their knowledge of how material this issue was to the government. The only comment I want to make, and I'll be quick, is that you've been so courteous to all of us, actually throughout the day, is that we never conceded the fact that the government would not take action. And I want to make that clear. I think I said it earlier. And the evidence of that is this CERA care case, which is identical, identical to this case. And the government tried the case for two and a half months. They got a verdict. The judge granted summary judgment on the objective falsity issue. It went to the CERCA court, and the CERCA court remanded. And there are other cases that the government has taken on, intervened on, and litigated on this exact issue. So it's a falsity to say, or it's misleading, I should say, to say the government has not acted on cases like this. The government has. And with that, I'd like to thank you for your time. And I respectfully request that you reverse and send us to a jury. Thank you. We thank all counsel for an excellent argument. It is an important and substantial case. We appreciate the superb briefing and argument by all and the time and effort that the government has taken to participate in arguments today. Thank you.